Argued and submitted August 10, affirmed September 6, 1995

MISSION BOTTOM ASSOCIATION, INC.,
Ron Sacchi, Tamra Sacchi, Spring Lake Farms,
Marie Zielinski, Adele Egan, Egan Gardens,
Lois Egan, Ellen Egan, Mission Cherry Farm,
Paul Witteman, Frances Witteman, Chapin Farms,
Jack Chapin, Mary Chapin, Ron M. Chapin,
Bruce R. Chapin, Velan E. Chapin
and Marion County Farm Bureau,
*Petitioners,*
*and*

David L. MASSEE,
*Intervenor-Petitioner Below,*
*v.*

MARION COUNTY
and Morse Bros., Inc.,
*Respondents.*

(LUBA 94-196; CA A89070)

901 P2d 898

Edward J. Sullivan argued the cause for petitioners. On the brief were Daniel Kearns and Preston Gates & Ellis.

Jane Ellen Stonecipher argued the cause and filed the brief for respondent Marion County. Paul R. Hribernick argued the cause for respondent Morse Bros., Inc. With him on the brief was Black Helterline.

Joseph H. Hobson, Jr., filed the brief *amicus curiae* for Oregon Farm Bureau Federation.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

In 1994, the Marion County governing body granted respondent Morse Bros., Inc.'s, (respondent) application to amend the county comprehensive plan and to apply a mineral and aggregate overlay zone to a 490-acre site in an exclusive farm use zone. The area includes 115 acres that, under a 1979 conditional use permit, respondent uses for batch plant operations within two miles of a planted vineyard, and for surface mining, extraction and processing of aggregate. The 1994 decision allows mining and extraction operations in parts of the 490-acre site that lie outside the area that is subject to the 1979 permit. Petitioners appealed the 1994 decision to LUBA, which accepted some of their arguments, but rejected most of them. Petitioners seek review of LUBA's decision. We affirm.

■ We write principally to address the third of petitioners' five assignments of error. Three of their other assignments require no discussion. The first assignment is related to the third, and calls for comment only for that reason. Petitioners assert in the first assignment, *inter alia*, that the county was required by state statutes to use a conditional use permit process to allow the mining and extraction uses authorized by the 1994 decision, in addition to or instead of the overlay zoning procedure that it followed pursuant to its zoning ordinance. However, we find nothing in the state statutes that requires a conditional use permit process for that purpose, or that requires more site-specific consideration than the ordinance procedure requires and that the county provided.

■ In their third assignment, petitioners assert that the 1994 decision results, *de facto*, in a substantial expansion of the batching and blending uses allowed by the 1979 conditional use permit and also was made without following the conditional use permit procedures required to expand those uses. Therefore, petitioners reason, the 1994 decision effectively expanded the uses authorized by the existing 1979 permit; the latter were thereby supplanted by the intensified uses and lost their "grandfathered" status under ORS 215.301(2); and the expanded use as a whole does not qualify for approval under ORS 215.301. ORS 215.301 provides:

"(1) Notwithstanding the provisions of ORS 215.213, 215.283 and 215.284, no application shall be approved to allow batching and blending of mineral and aggregate into asphalt cement within two miles of a planted vineyard.

"(2) Nothing in this chapter shall be construed to apply to operations for batching and blending of mineral and aggregate under a local land use approval on October 3, 1989, or a subsequent renewal of an existing approval.

"(3) Nothing in ORS 215.213, 215.263, 215.282, 215.284, 215.296 or 215.298 shall be construed to apply to a use allowed under ORS 215.213 (2) or 215.283 (2) and approved by a local governing body on October 3, 1989, or a subsequent renewal of an existing approval."

Insofar as petitioners' argument reiterates their earlier point concerning the need to follow a conditional use permit process in connection with the 1994 decision, we again reject it. As we understand their argument, however, petitioners also make a broader point: the operations must be viewed as a totality, and the new mining and extraction operations authorized in 1994 have the necessary effect of increasing the material to be processed and thereby intensifying the batching and blending operations authorized by the 1979 permit. Petitioners implicitly reason that, although the 1994 decision and respondent's application nominally deal only with aggregate mining and extraction outside the original 115-acre permit area, the practical effect is nevertheless to expand the batching and blending operations that were authorized in 1979. Accordingly, petitioners conclude, the augmented batching and blending operations that the 1994 decision effectively allows post-date the grace period in ORS 215.301(2) and are not permissible under the other subsections of the statute.

The county and respondent reply that petitioners simply assume "that any increase in the area available for mining automatically 'expands' [respondent's] existing batch plant." Assuming the correctness of petitioners' proposition that a county may not effectively expand a grandfathered batching and blending operation by later authorizing different uses that *in fact* lead to the impermissible effect, we agree with the county and respondent that an expansion of an existing batching and blending operation does not automatically or invariably follow from *every* authorization of other

aggregate-related uses on the property near the existing operation. The frequency of the batching and blending, the total combined volume of aggregate to be mined under the old and new authorizations and even the use of the batch plant for the processing of aggregate extracted pursuant to the new authorization cannot be *assumed* from the fact of the increased area of mining operations in itself. Petitioners advance nothing but postulation to support their assertion that the county's decision here authorizes an intensification of the existing batch plant use. They make no assignment of error suggesting that the county made erroneous findings or conclusions, or failed to make any necessary findings or conclusions, concerning the relationship between the new mining and extraction uses authorized in 1994 and the intensity or scope of the batch plant operation as authorized in 1979. Therefore, they fail to demonstrate that LUBA erred in concluding that the county's decision does not violate ORS 215.301.

Affirmed.