Argued and submitted December 9, affirmed December 31, 1996

MISSION BOTTOM ASSOCIATION, INC.,
Ron Sacchi, Tamra Sacchi,
Spring Lake Farms, Marie Zielinski,
Adele Egan, Egan Gardens, Lois Egan,
Ellen Egan, Mission Cherry Farm,
Paul Witteman, Frances Witteman,
Chapin Farms, Jack Chapin, Mary Chapin,
Ron M. Chapin, Bruce R. Chapin,
Velan E. Chapin and
Marion County Farm Bureau,
*Petitioners,*

*v.*

MARION COUNTY
and Morse Bros., Inc.,
*Respondents.*

(LUBA No. 96-057; CA A94939)

930 P2d 897

Edward J. Sullivan argued the cause for petitioners. With him on the brief was Preston Gates & Ellis.

Jane Ellen Stonecipher argued the cause for respondent Marion County. On the brief was Gloria Roy.

Paul R. Hribernick argued the cause for respondent Morse Bros., Inc. With him on the brief was Black Helterline.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioners seek review of LUBA's decision affirming Marion County's approval of a comprehensive plan amendment and a mineral and aggregate overlay zone. The county's decision adds a 490-acre site to the county's mineral and aggregate sites inventory and allows respondent Morse Bros., Inc. (respondent) to conduct mineral and aggregate extraction operations on a 186-acre area within the larger site.[1] The site is located in an exclusive farm use (EFU) zone. We write to address only one of petitioners' arguments, and we affirm.

The proposed use of the site for mineral extraction is permissible in the EFU zone pursuant to ORS 215.283-(2)(b)(B). However, in approving such a use in an EFU zone, a local government must make findings specified by ORS 215.296(1). That statute provides, as material:

"(1)   A use allowed under ORS 215.213(2) or 215.283(2) may be approved only where the local governing body or its designee finds that the use will not:

"(a)   Force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use; or

"(b)   Significantly increase the cost of accepted farm or forest practices on surrounding lands devoted to farm or forest use."

The county made findings to demonstrate that the permitted operations on the 186-acre area were consistent with the ORS 215.296(1) standards. Petitioners argued to LUBA that the county was required to go beyond that and to make findings of compatibility with the standards for the entire 490-acre site. Petitioners reasoned that the county's

---

[1] The county's decision was made after an earlier remand by LUBA. *Mission Bottom Assn., Inc. v. Marion County,* 29 Or LUBA 281, *aff'd* 136 Or App 275, 901 P2d 898 (1995).

The 490-acre site contains a 115-acre area, separate from the 186 acres where the new operations are to occur, where respondent conducts similar operations pursuant to a 1979 conditional use permit. The 115-acre area is not legally relevant to the issue that we discuss, but an awareness of it is necessary to avoid factual confusion.

decision affects the planning and zoning of and the prospective uses on the whole site, not just the 186 acres where the extraction operations are currently being permitted, and that the criteria of the statute must therefore be met for the entire affected area. LUBA concluded, in essence, that the county did not need to address the requirements of ORS 215.296(1) with respect to the entire 490 acres, because ORS 215.296(1) pertains to uses, and no use was approved by the county's decision except on the 186-acre part of the parcel.

■ Petitioners repeat their argument to us. We might agree with petitioners that, if a land use decision can result in additional or enlarged uses beyond those it expressly authorizes, the decision might be required to include the findings specified in ORS 215.296(1) for the prospective uses, as well as the ones that it permits directly. However, we conclude that, where the decision cannot have that effect, and where a later land use decision would be necessary to authorize or establish any additional or enlarged uses, the first decision need not address the ORS 215.296(1) factors with respect to those prospective uses. The ORS 215.296 findings for those uses would have to be made as part of the later decision, and we do not read the statute as demanding the duplication or the speculation that would be entailed by requiring that findings also be made at the earlier time.

In their written and oral arguments to us, the parties take different views of whether the present decision can result in mineral and aggregate extraction uses on parts of the site other than the 186-acre area, independently of some intervening later land use decision. Petitioners maintain that the zoning and plan changes, without more, can lead to further mineral and aggregate uses within the 490-acre site. Respondent and the county take the position that, because the county's decision contains specific language to limit the operations to the 186-acre area, no additions to or expansions of the mineral or aggregate related uses could be permitted in the absence of a subsequent comprehensive plan amendment or some other form of land use decision.

■ We agree with respondent and the county. The present decision amends the plan and adopts the overlay zone; without those actions, *no* mineral or aggregate extraction

activities would be permissible on the EFU site. The decision takes the form of an ordinance, which incorporates and appends the county's findings and conclusions. Those findings and conclusions are *part* of the decision, and they clearly authorize mineral extraction only on the 186-acre portion of the site. The findings recite, as one of "the main points of [the] decision," that "[m]ineral aggregate extraction will be allowed on a maximum of 186 acres outside the existing conditional use area." They continue, in greater detail:

> "This described area contains approximately 490 acres, including the Morse Bros. existing 115-acre conditional use site where extraction and processing are presently occurring. Of the approximately 375 new acres described above, we are protecting and approving 186 acres for mineral and aggregate extraction outside Morse Bros.' existing conditional use operation. The remainder of the site is not approved for mining and shall remain for farm use or wildlife habitat. * * * Our approval allows no more than 186 acres to be disturbed for surface mining."

In the light of those findings, we conclude that the county's decision, by its terms, allows the use that is subject to ORS 215.296(1) to be conducted only in the 186-acre area. Because the county's present decision expressly limits the use to that area and disallows other mineral and aggregate uses within the parts of the 490-acre site where they are not authorized by this decision or the 1979 permit, no addition to or enlargement of the uses or the area where they may be conducted could be accomplished without *some* later land use decision. We need not decide whether that decision would necessarily require an amendment to the county's plan, its zoning ordinance or the ordinance through which its present decision was adopted, or could simply take the form of a permit decision. In all of those instances, the criteria of ORS 215.296(1) would be applicable. Consequently, it was unnecessary for the county to consider or apply those criteria here for the parts of the site where no present mineral or aggregate uses were authorized by the present decision.

We have considered petitioners' other arguments and reject them without discussion.

Affirmed.